IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUGLAS GRANT MORTON,

    Plaintiff,

    v.

AUDI OF AMERICA, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-4420-TWT

**OPINION AND ORDER**

This is a personal injury and products liability action. It is before the Court on a plethora of motions by the parties, including the Defendant Volkswagen Group of America, Inc.'s Motion for Reconsideration [Doc. 12], Volkswagen Group of America's Motion to Transfer Venue [Doc. 18], the Defendants Asbury Automotive Group, Inc., FNK North America, Inc., Faurecia Automotive Seating, LLC, and Faurecia USA Holdings Inc.'s Motions for Joinder of Volkswagen Group of America's Motion to Transfer Venue [Docs. 19, 21], the Plaintiff's Motion to Remand [Doc. 24], and the Defendants Grammer Industries, LLC, Grammer, Inc., and Brose North America, Inc.'s Motions to Dismiss for Lack of Personal Jurisdiction [Docs. 26, 38]. For the reasons set forth below, the Plaintiff's Motion to Remand [Doc. 24] is DENIED; the Defendant Volkswagen Group of America's Motion to Transfer Venue [Doc. 18] is GRANTED; and the remaining Motions [Docs. 12, 19, 21, 26, 38] are DENIED as moot.

## I.  Background

This case arises from the catastrophic injuries that the Plaintiff Douglas Grant Morton sustained during a car accident on September 25, 2021, when he was rear ended by a truck while driving a 2020 Audi A6 in Marshall, North Carolina. (Am. Compl. ¶ 1). Although Morton was wearing a seatbelt, the car's driver seat head restraint broke and failed to contain him during the collision, allowing his head and body to move back over the seat and leaving him paralyzed from the chest down. (*Id.* ¶¶ 48, 52). He alleges that the car's defective driver seat occupant restraint system and head restraint proximately caused his injuries. (*Id.* ¶ 53).

The Plaintiff originally filed suit in Gwinnett County State Court on May 31, 2023, against Audi of America, LLC, Audi AG, Volkswagen Group of America, Inc., Volkswagen AG, and Asbury Automotive Group, Inc., the latter of which owns the Georgia-based dealership that sold the Audi vehicle involved in the incident. (Compl. ¶ 56). On August 17, 2023, the Plaintiff filed an Amended Complaint naming additional Defendants in the case after receiving information from Audi regarding the seat component suppliers, including the Defendant Lear Corporation who supplied the driver's seat. (Am. Compl. ¶ 59). On September 5 and 29, 2023, respectively, the Gwinnett County State Court denied Asbury's Motion to Compel Arbitration and Volkswagen's Motion to Dismiss for Forum Non Conveniens. (Docs. 24-2, 24-3). Lear removed the case

2

to this Court on September 28, 2023. The Plaintiff now moves to remand the case to the Gwinnett County State Court, and several Defendants seek transfer of the case to the Western District of North Carolina.

## II.   Legal Standard

Federal courts are courts of limited jurisdiction; they may only hear cases that the Constitution and Congress have authorized them to hear. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action originally brought in state court may be removed by a defendant to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441. Because of the limited authority of federal courts, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). When no federal question exists, diversity jurisdiction can be invoked under 28 U.S.C. 1332(a) where complete diversity exists among the parties and the amount in controversy exceeds $75,000. "[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

3

where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A court should consider the following factors in evaluating a motion to transfer under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "In a motion to transfer under § 1404(a), the burden is on [the defendant] to show that the balance of conveniences weighs in favor of the transfer." *Weintraub v. Advanced Corr. Healthcare, Inc.*, 161 F. Supp. 3d 1272, 1280 (N.D. Ga. 2015).

### III. Discussion

Because the Plaintiff's Motion to Remand implicates the Court's subject matter jurisdiction, the Court considers that motion first. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). The Court then considers the Defendant Volkswagen Group of America's Motion to Transfer Venue before turning to the merits of the case implicated by the Defendants' Motions for Reconsideration and to Dismiss for Lack of Personal Jurisdiction.

#### A. Remand

The issue of remand turns on whether the Defendant Asbury, a Georgia resident, was fraudulently joined in the case to defeat this Court's diversity

jurisdiction. The Plaintiff contends that he states a viable claim against Asbury and therefore that the case should be remanded under the forum defendant rule, 28 U.S.C. § 1441(b)(2). (Br. in Supp. of Pl.'s Mot. to Remand, at 1–4). In response, the Defendant Lear argues that remand is improper because the Plaintiff cannot state a claim against Asbury and thus fraudulently joined it to defeat diversity. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. to Remand, at 1–4).

When "on the face of the pleadings, there is a lack of complete diversity which would preclude removal of the case to federal court," the case "may nevertheless be removable if the joinder of the non-diverse party . . . [was] fraudulent." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Joinder of a non-diverse party may be fraudulent "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Id.*

> To assess whether a plaintiff may establish a claim against a non-diverse defendant, the court must evaluate factual allegations in the light most favorable to the plaintiff. The court should not weigh the merits of the plaintiff's claims beyond determining whether they are arguable under state law, and should resolve uncertainties about state substantive law in the plaintiff's favor. If there is even a possibility that a state court would find that the complaint states a claim against any of the non-diverse defendants, then the joinder was proper and the federal court must remand the case to the state court.
>
> . . . All that is required are allegations sufficient to establish even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants.

*Kimball v. Better Bus. Bureau of W. Fla.*, 613 F. App'x 821, 823 (11th Cir. 2015) (citations omitted). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under [Rule] 56(b), the jurisdictional inquiry must not subsume substantive determination." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (quotation marks and citations omitted).

In addition, when evaluating whether a plaintiff states a claim against a non-diverse defendant, federal courts "necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Kimball*, 613 F. App'x at 823 (citation omitted). Georgia state courts employ a notice pleading standard, under which a plaintiff may plead legal conclusions and those conclusions may be considered by the court in determining whether the complaint sufficiently states a claim. *Id.*

> Georgia courts will not grant a motion to dismiss for failure to state a claim unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

> In Georgia, a complaint need not set forth all of the elements of a cause of action as long as, within the framework of the complaint, evidence may be introduced to sustain a grant of relief to the plaintiff. The true test under Georgia's pleading standard is whether the pleading gives fair notice and states the elements of the claim plainly and succinctly, and not whether as an abstract matter it states conclusions or facts.

*Id.* at 823-24 (quotation marks, alterations, and citations omitted).

In his Amended Complaint, the Plaintiff brings claims of negligence and breach of express and implied warranty against Asbury. He summarily alleges that Asbury "(1) negligently inspected or failed to inspect, maintain, service, and/or repair the subject vehicle, (2) negligently allowed the subject vehicle to leave Asbury's dealership in an unsafe condition, and (3) negligently failed to warn of dangers and defects that it should have known existed." (Br. in Supp. of Pl.'s Mot. to Remand, at 9 (citing Am. Compl. ¶¶ 133–56)).[1] He contends that such allegations are sufficient to state a negligence claim against Asbury under North Carolina law, and he disputes the Declaration of Asbury's general manager, Andre Young, offered in support of removal as being self-serving and merely denying the Amended Complaint's allegations. (*Id.* at 11–14).

---

[1] The Plaintiff offers no argument in support of his warranty claims against Asbury, presumably because the Gwinnett County State Court held he could not be compelled to arbitration as a third-party beneficiary to the vehicle sale contract and thus could not bring warranty claims under the sale contract. (*See* Doc. 24-2). The Court therefore only considers the possibility of his negligence claims against Asbury in evaluating fraudulent joinder.

7

In response, the Defendant Lear argues that the Plaintiff fails to refute the evidence set forth in Young's Declaration, thereby foreclosing a dispute of fact that would require resolution in the Plaintiff's favor and remand of the case. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. to Remand, at 15 (citing *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005))). In his Declaration, Young states that the only pre-delivery inspection items related to the driver's seat that Asbury performed included verifying operation of seat belts/latches, seat controls, and heated/ventilated or massaging seats. (Young Decl. ¶ 7). He states that Asbury performed no post-sale service or maintenance on the vehicle related to its seats, occupant restraint system, or headrests. (*Id.* ¶ 8). He also notes that "Asbury is not an expert in vehicle design, manufacture, assembly or safety," that it "does not employ engineers or other professionals charged with designing, manufacturing or assembling automobiles," and that it "does not have the capability or expertise to crash test vehicles or to evaluate their crashworthiness" or "how a vehicle's occupant restraint system, including its driver seat and headrest, might respond to various crash scenarios." (*Id.* ¶¶ 10, 12–13). Finally, Young claims that "Asbury did not receive any recall notices or service bulletins related to an alleged defect or problem with the seat or headrest in the 2020 Audi A6 model vehicle before . . . [or] since the sale of the Subject Vehicle." (Young Decl. ¶ 15). Lear claims that the Declaration totally contradicts the Plaintiff's allegations that Asbury had any duty to

8

inspect, identify, and warn of the latent seat defect that allegedly caused the Plaintiff's injuries. (Def.'s Resp. Br. in Opp'n to Pl.'s Mot. to Remand, at 13–15).

In reply, the Plaintiff notes that Asbury itself did not originally seek dismissal or removal of the Plaintiff's Complaint and argues that he presented disputed issues of fact as to the possibility of his negligence claim that require remand of the case and further discovery as to Asbury's potential liability. (Reply Br. in Supp. of Pl.'s Mot. to Remand, at 1, 5–7). The Plaintiff also alludes to a 2018 seat recall notice for 2018 Audi A3s and a 2019 technical services bulletin for 2016 Audi TTs listed on Asbury's website as evidence of scenarios where Asbury "inspects and repairs defective seat components for crashworthiness issues," which the Plaintiff claims contradicts Young's Declaration. (*Id.* at 7–9).

Here, the Plaintiff pleaded that Asbury knew of the alleged defect, (Am. Compl. ¶ 137), which he is entitled to plead generally, *see* O.C.G.A. § 9-11-9, and which excepts the general rule that a non-manufacturing seller ordinarily has no affirmative duty to inspect or discover and warn against latent defects. *Nicholson v. Am. Safety Util. Corp.*, 124 N.C. App. 59, 65 (1996); *Crews v. W.A. Brown & Son, Inc.*, 106 N.C. App. 324, 329–30 (1992).[2] But "[w]hen the

---

[2] North Carolina law governs the validity of the Plaintiff's negligence claims against Asbury. *See Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1327 n.9 (11th Cir. 2014).

9

Defendant['s] affidavit[] [is] undisputed by the Plaintiff[], the court cannot then resolve the facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." *Legg*, 428 F.3d at 1323.[3] Such is the case here. Like the plaintiffs in *Legg* who failed to refute the defendant's declaration that she did not know the drug at issue might cause valvular heart disease, the Plaintiff here does not refute Asbury's declaration that it had no knowledge of any seat defect in the 2020 Audi A6. In fact, the evidence that the Plaintiff offers in support of such knowledge (the 2018 seat recall notice for 2018 Audi A3s and the 2019 technical services bulletin for 2016 Audi TTs), bolsters Asbury's position that no such recall for the 2020 Audi A6 existed because, if it had, such a recall would have been available on the website that the Plaintiff searched. And because the Plaintiff concedes that the alleged defect was latent, (Am. Compl. ¶¶ 146–47), Asbury must have known or had reason to know of the seat's allegedly dangerous propensities in order for the Plaintiff to state a viable negligence claim against Asbury. *See Nicholson*, 124 N.C. App. at 65. Absent the substantiation of such knowledge, the Plaintiff fails to state a negligence claim against Asbury. *See Legg*, 428 F.3d at 1323.

The present case is distinguishable from *Fee v. Volvo Group of North America, LLC*, 2020 WL 6865777, at *4 (N.D. Ga. Oct. 20, 2020), where the

---

[3] Alabama state courts employ a notice pleading standard similar to that of Georgia state courts. *Crum v. Johns Manville, Inc.*, 19 So. 3d 208, 212 (Ala. Civ. App. 2009).

10

court remanded the case over a claim of fraudulent joinder. In *Fee*, one of the plaintiffs was injured in a trucking accident and brought claims in Georgia state court against the truck manufacturer, the truck leasing company, and the manager of the truck leasing company, asserting negligence claims regarding the truck's "wheel hub and wheel-bearing system(s)" and "driver restraint system." *Id.* at *1 (citation omitted). The defendants then removed to this court, claiming that the resident manager was fraudulently joined to defeat diversity. *Id.* The plaintiffs alleged that the manager was "negligent in performing service on, or failing to inspect, the subject tractor-trailer, or for failing to warn of defects he should have known existed." *Id.* at *2. In response, the manager submitted a declaration stating that he "did not perform the allegedly defective service on the tractor-trailer" and that he "never inspected, serviced, maintained or repaired a tractor or trailer *other than for obvious physical issues*, such as dents, cracks, or broken windshields." *Id.* at *3 (citation omitted). The court seized on the emphasized language to conclude that the manager was "not necessarily excluded from all maintenance-related responsibilities" and therefore declined to draw the inference that the plaintiffs' allegations of negligent inspection and failure to warn were necessarily outside the purview of the manager's responsibilities. *Id.* at *4. In remanding the case, the court reasoned that *Legg* did not require a finding of fraudulent joinder because the manager's declaration did not "entirely rebut"

the plaintiffs' allegations. *Id.*

Here, in contrast, Asbury's declaration *does* entirely rebut the Plaintiff's allegations of negligent inspection and failure to warn. Specifically, Asbury outlines the types of routine pre-delivery inspection and post-sale maintenance that it carries out, none of which involve inspection for latent defects that affect vehicle crashworthiness. (Young Decl. ¶¶ 7–8). Asbury also disavows any knowledge of an alleged design defect in the seat or headrest of the 2020 Audi A6 that could support a heightened duty of care under North Carolina law, which generally precludes an affirmative duty to inspect and warn against latent defects. *Nicholson*, 124 N.C. App. at 65. And though the truck leasing company's manager in *Fee* declared that he inspected tractor-trailers for "obvious physical issues," presumably similar to those contained in the pre-delivery inspection items that Asbury performed, the Plaintiff's allegations here confirm that the design defect he claims caused his injuries was a latent one, (Am. Compl. ¶¶ 146–47), and Asbury makes clear that it does not inspect for latent defects. (Young Decl. ¶ 12). Under these circumstances, the Court cannot conclude that the Plaintiff has asserted more than a "metaphysical doubt as to the material facts" that would warrant remanding the case. *Legg*, 428 F.3d at 1323.

The Court pauses briefly to acknowledge the seeming contradiction between the state court's notice pleading standard and the result here—a

12

plaintiff need only generally allege knowledge of a defect to support a possible negligence claim in state court, but to prevail on a motion to remand, she must set forth evidence in support of such knowledge to create a dispute of fact resolvable in her favor. The Court can only construe such an added burden as a hurdle for the plaintiff to clear to secure the forum of her choosing in seeking remand. But such a hurdle proved insurmountable for the Plaintiff here who, without the benefit of discovery, has no evidence that Asbury knew or should have known of any seat defect in the 2020 Audi A6.

The Court is not unsympathetic to the catastrophic injuries that the Plaintiff sustained in this accident. And the Court is mindful that Asbury did not even contest its joinder to the case at the outset when it filed its motion to compel arbitration. But, confronted with the stark similarity to the facts giving rise to the denial of the motion to remand in *Legg*, the Court must conclude that Asbury was fraudulently joined. Fortunately, the Plaintiff is not left without a remedy here, but he must pursue that remedy in a forum that wasn't of his original choosing. Accordingly, the Court concludes that the Defendant Lear has carried its heavy burden to show that Asbury was fraudulently joined as a party to the case, and because Asbury was fraudulently joined, the forum defendant rule does not preclude the Court's diversity jurisdiction over the case. The Plaintiff's Motion to Remand should therefore be denied, and the Defendant Asbury is hereby dismissed as a party to the case.

### B. Transfer

The Court turns next to the Defendant Volkswagen Group of America's Motion to Transfer Venue. Volkswagen contends that transfer to the Western District of North Carolina is proper because the underlying accident in the case occurred there, because all the witnesses to the accident reside there, and because the Plaintiff fraudulently joined the lone Georgia-resident Defendant, Asbury, to this case in an effort to avoid North Carolina's strict contributory negligence statute. (Br. in Supp. of Def. VW's Mot. to Transfer, at 1–3). In response, the Plaintiff argues that the balance of the factors governing transfer weighs in favor of maintaining the Plaintiff's choice of forum in Georgia. (Pl.'s Resp. Br. in Opp'n to Def. VW's Mot. to Transfer, at 6).

As a preliminary matter, whether venue is even proper in this district is an unclear issue, unbriefed by the parties. "When a defendant raises an objection to venue, the plaintiff bears the burden of demonstrating the chosen venue is proper." *Kuehne v. FSM Capital Mgmt., LLC*, 2013 WL 1814903, at *2 (S.D. Fla. April 29, 2013). Relevant to this case, venue lies in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2); *see also Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). Having found that the Plaintiff failed to state a possible negligence claim against the Defendant Asbury, the Court cannot

14

conclude that a substantial part of the events giving rise to the Plaintiff's claims occurred here in the Northern District of Georgia. The design of the allegedly defective seat for which the Plaintiff seeks recovery did not occur in this District, nor did the accident in which the Plaintiff sustained his injuries. And though the 2020 Audi A6 that the Plaintiff was driving when the accident occurred is now located in this District, after his counsel moved the car here without notifying the Defendants' counsel, (Br. in Supp. of Def. VW's Mot. to Transfer, at 15), establishing venue through such a unilateral move of personal property seems questionable, at best. Thus, without deciding whether venue is proper here, the Court considers whether transferring the case is appropriate.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). District courts consider the following factors in evaluating a motion to transfer under § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel*, 430 F.3d at 1135 n.1. "In a motion to transfer under § 1404(a), the burden is on [the defendant] to show that the balance of conveniences weighs

15

in favor of the transfer." *Weintraub*, 161 F. Supp. 3d at 1280.

Because none of the remaining parties to the case reside in Georgia, after finding fraudulent joinder of Asbury, several of these factors weigh neutrally. Both the Northern District of Georgia and the Western District of North Carolina are presumably equally inconvenient for the non-resident parties, despite Atlanta's more accessible airport. The relative means of the parties also weighs neutrally considering that the Defendants are non-resident corporate entities and the Plaintiff, a California resident, chose to file suit across the country in Georgia. Many of the relevant documents pertaining to the Plaintiff's design defect claims are presumably located outside both Georgia and North Carolina, which favors neutrality of the factor, though some documents related to the car accident itself may be located in North Carolina. The locus of operative facts in this case weighs slightly in favor of North Carolina as the forum, considering that the Plaintiff's car accident occurred there; however, the bulk of the operative facts concerning the alleged design defect will likely come from outside both Georgia and North Carolina, supporting a finding of neutrality.

But the Defendant Volkswagen Group of America has indicated that it intends to call several individuals as non-party witnesses who were involved in the accident, all of whom reside in North Carolina and have indicated their unwillingness to travel to Atlanta for trial in this case. (Br. in Supp. of Def.

16

VW's Mot. to Transfer, at 4–6). Two of these individuals, Scottie Proffitt and Jesse Ramsey, were directly involved in the car accident and were potentially contributorily negligent in causing the accident. (*Id.* at 3–4). Under these circumstances, the Court concludes that the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses both strongly favor transfer of this case. *See Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ("Given the fact that, when possible, live testimony is preferred over other means of presenting evidence, the convenience of the non-party witnesses weighs most heavily on the Court in deciding on a motion to transfer venue."); *Elec. Transaction Network v. Katz*, 734 F. Supp. 492, 501–02 (N.D. Ga. 1989) ("The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses").[4] The forum's familiarity with the governing law also weighs in favor of transferring the case, considering that North Carolina governs the Plaintiff's claims.

That leaves the weight accorded to the Plaintiff's choice of forum, which disfavors transfer. But "[a]lthough the Plaintiff['s] choice of forum is typically granted a great deal of deference, it is entitled to less weight when none of the

---

[4] The issue here is not, as the Plaintiff contends, whether the non-party witnesses are necessary and indispensable but whether, in the interest of justice, the case should be transferred to a venue where their testimony can be heard. (Pl.'s Resp. Br. in Opp'n to Def. VW's Mot. to Transfer, at 13 (citing *Deaton Holdings, Inc. v. Reid*, 367 Ga. App. 746, 747 (2023))).

parties reside[] there." *Ramsey*, 323 F. Supp. 2d at 1355. In sum, all factors weigh either in favor of transfer or neutrally, with the exception of the Plaintiff's choice of forum, which is entitled to less weight here. Accordingly, based on the totality of the circumstances and in the interest of justice, the Court concludes that the case should be transferred to the Western District of North Carolina.

### C. Reconsideration and Dismiss

Having found that this case should be transferred to the Western District of North Carolina, the Court declines to address the remaining Motions for Reconsideration and to Dismiss.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's Motion to Remand [Doc. 24] is DENIED; the Defendant Volkswagen Group of America's Motion to Transfer Venue [Doc. 18] is GRANTED; and the remaining Motions [Docs. 12, 19, 21, 26, 38] are DENIED as moot. The Clerk is DIRECTED to transfer this case to the U.S. District Court for the Western District of North Carolina.

SO ORDERED, this   24th   day of January, 2024.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge